UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DAVID EDWARD FRIEDLAND,

    Plaintiff,

v.                                                                                                       Civ. No. 16-191 GJF

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,

    Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" ("Motion"), filed on October 21, 2016. ECF No. 19. The Commissioner responded on January 20, 2017. ECF No. 23. Plaintiff replied on February 6, 2017. ECF No. 24. Having meticulously reviewed the briefing and the entire record, the Court concludes that the Commissioner followed the correct legal standards and supported her decision with substantial evidence. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

I. **PROCEDURAL BACKGROUND**

On May 9, 2012, Plaintiff applied for disability insurance benefits ("DIB"), alleging disability beginning April 20, 2011. Administrative Record ("AR") 186. On September 26, 2012, Plaintiff applied for supplemental security income ("SSI"), also alleging disability beginning April 20, 2011. AR 193. Plaintiff alleged disability due to chronic pain in his lower back, sciatica, tendonitis, a heart attack in December 2010, depression, high blood pressure, high cholesterol, and headaches. AR 226. Plaintiff's applications were denied initially on October 4, 2012. AR 128. On reconsideration, Plaintiff's applications were again denied on June 21, 2013.

AR 136. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 12, 2014, before ALJ John Rolph, in Albuquerque, New Mexico. AR 9-19; 25. Plaintiff testified at the hearing, along with Leslie White, an impartial vocational expert ("VE"). AR 25. Plaintiff was represented at the hearing by Kimberly Wyatt, an attorney. AR 25.

On September 17, 2014, ALJ Rolph issued his decision, finding Plaintiff not disabled under the Social Security Act and therefore not entitled to either SSI or DIB. AR 19. Plaintiff requested review by the Appeals Council, which was denied on January 13, 2016, making the ALJ's decision the Commissioner's final decision. AR 1. Plaintiff subsequently appealed on March 15, 2016. ECF No. 1.

## II. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[1] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

## B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is able to perform his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

**III.     SUMMARY OF ARGUMENTS**

Plaintiff advances two arguments in support of reversing and remanding the ALJ's decision.  First, Plaintiff argues the ALJ improperly rejected the opinion of Plaintiff's treating physician, Steven Hartman, M.D.  Pl's. Mot. 15-19.  Second, Plaintiff claims the ALJ committed reversible error by failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").  Pl.'s Mot. 19-23.  The Commissioner responds that the ALJ's treatment of Dr. Hartman's was legally correct and supported by substantial evidence. Def.'s Resp. 4-9.  Further, the Commissioner maintains there is no conflict between the VE's testimony and the DOT; rather, Plaintiff has manufactured a false conflict. Def.'s Resp. 9-10.

**IV.     ALJ'S DECISION**

On September 17, 2014, the ALJ issued his decision denying Plaintiff's applications.  In doing so, the ALJ conducted the five-step sequential evaluation process.  AR 9-19.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.  AR 11.  At step two, the ALJ determined Plaintiff has the following severe impairments: back problems (degenerative disc disease with chronic pain/sciatica); coronary artery disease, status post myocardial infarction with stent placement and residual chest pain; headaches; bilateral shoulder pain; obesity; obstructive sleep apnea/hypoxia; depression; and a pain disorder associated with both psychological factors and a general medical condition.  AR 11.  The ALJ also determined Plaintiff has several non-severe impairments, including opioid dependence, vision problems, hyperlipidemia, hypertension, tobacco use, vitamin D deficiency, insomnia, chronic sinusitis, and wrist tendonitis.  AR 11.  At step three, the ALJ concluded none of Plaintiff's impairments, singly or in combination, met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 12.

Before proceeding to step four, the ALJ found Plaintiff possessed significant residual functional capacity ("RFC"), including: the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.927(b), including lifting up to twenty pounds occasionally; sitting, standing, and walking "six hours each" in an eight-hour workday for up to 30-40 minutes at a time; frequently reaching overhead with his upper extremities; occasionally climbing ramps and stairs, balancing, stooping, twisting at the waist, kneeling, crouching, and crawling; but never climbing ladders, ropes, or scaffolds. AR 14. However, Plaintiff must avoid more than occasional exposure to extreme cold and vibration, and he must avoid all exposure to hazards such as dangerous machinery and unsecured heights. AR 14. The ALJ further found Plaintiff capable of learning, remembering, and performing both simple and detailed work tasks, up to and including SVP-4 jobs, which are performed in a routine, predictable, and low-stress work environment, which is defined as one with a regular pace, few workplace changes, and no "over the shoulder supervision." AR 14. Plaintiff can maintain concentration, persistence, and pace for two hours at a time with normal breaks. Finally, Plaintiff can respond appropriately to supervisors and coworkers, but he may have only occasional contact with the public. AR 14.

The ALJ based Plaintiff's RFC on his discussion of Plaintiff's symptoms, objective medical evidence, and medical opinions in the record. While the ALJ believed Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, the ALJ found Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible. AR 15. First, the ALJ discussed Plaintiff's history of coronary disease. AR 15. The ALJ noted Plaintiff's most recent records indicated his heart condition remained stable on medications and he has not required more aggressive treatment. AR 15. Upon physical examination in May and April 2011, Plaintiff reported exercising with no limitation in effort

tolerance and no shortness of breath, dizziness, syncope, or other serious symptoms. AR 15. Regarding Plaintiff's chronic headaches, the ALJ noted that medical records similarly documented good responses. AR 15. MRIs performed prior to April 30, 2011 were unremarkable, and no evaluations or treatment has been pursued beyond medication. AR 15.

Next, the ALJ addressed Plaintiff's alleged severe lower back pain and shoulder pain. According to the ALJ, objective findings were "minimal." AR 15. X-rays taken in April 2012 were unremarkable: the examiner indicated vertebral and disc heights were normal with no significant degenerative changes. AR 15. Other x-rays taken in July 2013 showed mild degenerative joint disease and mild degeneration. AR 15. Later x-rays, however, taken in August 2013, were normal. AR 15. X-rays of Plaintiff's left shoulder likewise showed it was normal. AR 15.

Relevant to this appeal, the ALJ considered the opinion of Steven Hartman, M.D., Plaintiff's treating physician. AR 16. The ALJ noted Dr. Hartman's opinion that Plaintiff can: lift ten pounds occasionally and more than ten pounds frequently; sit for one hour at a time and four hours total in an eight-hour workday; stand for one hour at a time and for two hours total in an eight-hour workday; and cannot bend, stoop, crouch, or climb ladders or stairs. AR 16. Dr. Hartman also opined that Plaintiff has significant limitations in reaching, handling, and fingering, and that Plaintiff must elevate his legs when sitting. AR 16.

While recognizing Dr. Hartman was Plaintiff's treating physician, the ALJ gave Dr. Hartman's opinion "only limited weight." AR 16. First, the ALJ considered that Dr. Hartman did not submit any treatment records or progress notes supporting his conclusions, and the treatment records from Dr. Hartman in the record did not support his assessed limitations. AR 16. Further, the ALJ considered Dr. Hartman's "extreme" limitations inconsistent with the

7

objective evidence, namely Plaintiff's x-rays, MRIs, physical examinations, and Plaintiff's "demonstrated daily activities." AR 16.

The ALJ also considered Plaintiff's daily activities, which the ALJ considered inconsistent with a claim of severe disability. AR 17. Plaintiff testified he helps his wife with her jewelry business three times a week, performs wood work, and shops for groceries. AR 17. Plaintiff also testified he uses a computer regularly, which evidenced his ability to maintain attention and concentration and perform complex work tasks. AR 17.

Moving on to step four, the ALJ found Plaintiff could not perform his past relevant work. AR 17. However, at step five, the ALJ relied on VE testimony in determining Plaintiff could perform jobs existing in significant numbers in the national economy, such as shipping and receiving weigher, laundry folder, and distribution clerk. AR 18-19. Given that determination, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act and therefore not entitled to benefits. AR 19.

V.  ANALYSIS

   A.  Assessment of Dr. Hartman's Opinion

Plaintiff first argues that the ALJ improperly rejected Dr. Hartman's opinion. Pl.'s Mot. 2, 15-19. According to Plaintiff, because Dr. Hartman's opinion necessarily means that Plaintiff could not perform light work, and because Plaintiff was closely approaching advanced age, Plaintiff must necessarily be disabled. Pl.'s Mot. 16-17. Plaintiff accuses the ALJ of providing conclusory, unsupported reasons for assigning Dr. Hartman's opinion little weight. Pl.'s Mot. 17-18. The Commissioner responds that the ALJ's reasons were appropriate, specific, and supported by substantial evidence. Def.'s Resp. 6-9.

The administrative record contains records and notes from Plaintiff's three visits to Dr. Hartman. On November 21, 2012, Plaintiff first visited Dr. Hartman in order to establish care. AR 448. At that time, Plaintiff had "no acute issues," but he needed prescription refills. AR 448. Although 1Plaintiff presented with no headache or neck pain, he did complain of muscle aches in his right lower back, "generalized pain at night," and pain localized in the joints in his lower back. AR 449. Plaintiff reported no "motor disturbances," though he did occasionally experience a shooting sensation down his right leg. AR 448. Significantly, Dr. Hartman opined Plaintiff's statements were out of proportion to his examination of Plaintiff. AR 450.

One week later, on November 28, 2012, Plaintiff returned to Dr. Hartman to follow up on his pain medication. AR 451. Plaintiff stated he had been out of pain medication for the last week, that his pain had not significantly increased, and that he was not experiencing withdrawal symptoms. AR 451. Plaintiff acknowledged the possibility that he was dependent on opiates, stating he used opiates as a "pick me up" rather than a pain management tool. AR 451. Regarding his symptoms, Plaintiff complained of muscle aches in his lower back, joint pain in his right hip, and "sensory disturbances" down his right leg. AR 452. On examination, Plaintiff was able to get on the exam table and turn prone "without impairment," and his hip range of motion was intact. AR 453. In the end, Dr. Hartman discussed Plaintiff's potential opiate dependence and referred him to another doctor for pain assessment and potential chronic therapy. AR 452-53.

On January 24, 2013, Plaintiff returned to Dr. Hartman following pain evaluation and a recommendation that Plaintiff seek joint steroid injections. AR 455. Plaintiff presented without headaches, muscle aches, or joint stiffness, but did present with localized joint pain in his lower back. AR 456. Dr. Hartman reported that Plaintiff's pain was stable on ibuprofen and Tylenol,

9

that Plaintiff was in no acute distress, and that Plaintiff's pain control was "no better when taking opiate pain medications." AR 457. At this meeting, Dr. Hartman filled out disability paperwork. AR 457.

Dr. Hartman submitted a "Medical Opinion re: Ability to Do Physical Activities," dated January 24, 2013. AR 842-44. At the start, Dr. Hartman diagnosed Plaintiff with bony arthralgia and depression and indicated Plaintiff has a "fair" prognosis. AR 842. Dr. Hartman indicated Plaintiff can walk only one city block without needing rest and can only sit or stand for an hour at a time. AR 842. According to Dr. Hartman, Plaintiff can sit up to four hours in a workday and stand or walk only two hours. *Id*. Plaintiff will need to take unscheduled breaks every hour for five to fifteen minutes. AR 842-43. While engaged in prolonged sitting, Plaintiff should elevate his legs–roughly 45% of the day if he has a sedentary job. AR 843. While engaged in prolonged standing or walking, Plaintiff must use a cane or other assistive device. AR 843. Dr. Hartman further opined that Plaintiff cannot safely lift or carry more than ten pounds, can only occasionally lift ten pounds, and can frequently lift ten pounds. AR 843. Dr. Hartman stated Plaintiff has significant limitations in reaching, handling, and fingering, such that Plaintiff cannot use his hands, fingers, or arms more than 15% of a workday, and that Plaintiff can never twist, bend, crouch, or climb stairs or ladders. AR 843-44. Finally, Dr. Hartman checked boxes indicating Plaintiff will have "good days" and "bad days," and will probably be absent from work more than twice a month. AR 844.

In addition to Dr. Hartman's treatment records and opinion, the record contains imaging analysis of Plaintiff's lower back and shoulder, which the ALJ referred to in his discussion. AR 16. X-rays of Plaintiff's lower back taken on August 29, 2012, showed normal vertebral and disc heights, no significant facet joint or disc degeneration, and "minimal" calcification. AR

10

425. The x-rays showed "some" sclerosis in Plaintiff's right sacroiliac joint, but the evaluator found Plaintiff's lumbosacral spine "unremarkable" and recommended Plaintiff follow up with physical therapy. AR 425. A radiology report dated July 11, 2013, stated Plaintiff's left shoulder was "normal." AR 501. An examination of Plaintiff's lumbar spine showed "mild" degenerative joint disease changes, "early" atherosclerosis, and unremarkable sacroiliac joints. *Id.* The report ends by stating "no other problem is found." AR 501.

The ALJ also relied on Plaintiff's reported daily activities in rejecting Dr. Hartman's opinion. AR 17. Plaintiff testified that he goes grocery shopping by himself once every two weeks on average. *See* AR 48 (stating he goes grocery shopping once a week on average and that his wife accompanies him half the time). Plaintiff stated he played online games with his wife, though he takes breaks from sitting. AR 54-55. On a Function Report–Adult, Plaintiff wrote that he spends much of the day on the computer watching Netflix and Youtube. AR 245. Plaintiff also testified he assists his wife with her jewelry business at trade shows and does woodwork with a utility knife. AR 59, 595.

In formulating his analysis, the ALJ assigned Dr. Hartman's opinion limited weight for three reasons: (1) Dr. Hartman did not submit treatment records or progress notes supporting his conclusions; (2) the treatment records from Dr. Hartman do not support the severe limitations that he assessed; and (3) Dr. Hartman's opinion was contradicted by objective medical evidence and Plaintiff's daily activities. AR 15. Although the ALJ did not discuss Dr. Hartman's treatment records, the ALJ discussed the objective medical evidence, Plaintiff's daily activities, and how he considered both inconsistent with a claim of disability. AR 15-17. Moreover, Plaintiff does not dispute that Dr. Hartman's opinion is not tied to any specific treatment notes or

records. However, Plaintiff alleges the ALJ erred by failing to adequately explain what evidence does not support Dr. Hartman's opinion. Pl.'s Mot. 17-18.

"Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) (2003)). The notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5). When evaluating a treating source medical opinion as to the nature or severity of an individual's impairments, an ALJ should "[g]enerally . . . give more weight to opinions from [claimant's] treating sources." 20 C.F.R. § 404.1527(d)(2) (2016). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

The Tenth Circuit has explained that resolving whether a medical opinion is entitled to controlling weight does *not* conclude the analysis:

> [A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.

*Id*. (quoting SSR 96-2p, 1996 WL 374188, at *4).

The factors set forth in 20 C.F.R. §§ 404.1527 and 416.927 are:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons – reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" – for whatever weight he or she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (10th Cir. 2004). Further, if an ALJ rejects the medical opinion in its entirety, he or she must provide "specific, legitimate reasons" for doing so. *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

Mindful of its standard of review and the admonition that the Court should not substitute its opinion for the Commissioner's, the Court concludes the ALJ followed the correct legal standards and supported his determination with substantial evidence. The ALJ provided three clear reasons for the weight he assigned to Dr. Hartman's opinions that are specific enough for the Court to meaningfully review; the Court is not left to wonder why the ALJ discounted Dr. Hartman's opinion. *See* SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996) (stating ALJ's reasons must be sufficiently specific to permit meaningful subsequent review).

Further, the ALJ's reasons are supported by substantial evidence. Dr. Hartman did not cite any treatment notes or records in support of his assessed limitations, which goes to the supportability and consistency of his opinion. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4),

416.927(c)(3)-(4). As discussed, Plaintiff does not dispute that Dr. Hartman's opinion was not accompanied by any specific support. Additionally, as the ALJ noted, Plaintiff's x-rays show normal and unremarkable findings, and any abnormalities were "mild." AR 358, 425, 501-2. To conclude as much does not, as Plaintiff alleges, invade "the province of medicine." Pl.'s Mot. 18 n.9. "Normal," "unremarkable," and "mild" appear on the face of the imaging analyses. AR 358, 425, 501-2. Plaintiff highlights only the finding that there was "some subchondral sclerosis" on one x-ray. Pl.'s Mot. 18 (citing AR 425). This one citation hardly detracts from the ALJ's findings.

The ALJ also considered Plaintiff's daily activities inconsistent with Plaintiff's claims of severe disability. Specifically, the ALJ determined Plaintiff's computer use indicated he could maintain attention and concentration and stay on task. AR 17. Although Plaintiff testified he took regular breaks, the ALJ incorporated that testimony into his RFC. AR 14, 54-55. Thus, although Plaintiff states the ALJ did not explain how Plaintiff's daily activities detract from his claim, Pl's Mot. 18, the ALJ specified at least one reason why he found them inconsistent.

Finally, regarding the ALJ's last reason, that Dr. Hartman's treatment notes do not support his assessment, the ALJ did not discuss notes or records from Dr. Hartman. This is problematic, as it is not clear why the ALJ believed Dr. Hartman's notes did not support Dr. Hartman's assessed limitations. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . ."). However, Plaintiff does not cite any portion of Dr. Hartman's notes or records that support his assessed severe limitations. While Dr. Hartman noted several severe reaching, handling, and fingering limitations, records from Plaintiff's visits to Dr. Hartman do not contain any reference to any

14

potential impairment relating to Plaintiff's upper extremities. On the contrary, Plaintiff only reported stiffness and pain in his lower back and leg. AR 448-57. Plaintiff cites only Dr. Hartman's diagnoses of sacroiliitis and joint arthrosis as supporting Dr. Hartman's findings. Pl.'s Mot. 18-19. Again, Dr. Hartman's treatment and reference to Plaintiff's *lower* body pain does not support Dr. Hartman's assessed limitation related to Plaintiff's *upper* body, like inability to handle, finger, or reach more than 15% of the day. Accordingly, the Court finds any error here harmless, as no portion of Dr. Hartman's treatment notes support his opinions regarding Plaintiff's extreme limitations. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (finding harmless error "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way"). In any case, the ALJ supported his determination with two reasons that were clear, specific, and supported by the evidence. The Court therefore finds the ALJ did not err in his consideration and weighing of Dr. Hartman's opinion.

### B. Conflict between the DOT and the VE's testimony

Plaintiff contends that the ALJ erred in failing to resolve a conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony. Plaintiff alleges the ALJ formulated an "alternate" sitting, standing, and walking requirement when he found Plaintiff able to "sit, stand, and walk six hours each in an 8-hour day, for up to 30-40 minutes at a time." Pl.'s Mot. 21-22 (citing AR 14). According to Plaintiff, this "somewhat inscrutable" limitation means that Plaintiff is limited to standing for 3 hours, walking for 3 hours, and sitting for 3 hours. Pl.'s Mot. 21-22. Plaintiff argues this alternative limitation conflicts with the DOT's definition of "light work" and the ALJ failed to resolve the discrepancy. For her part, the Commissioner

responds that this supposed conflict is Plaintiff's creation and that the VE's testimony does not conflict with the DOT. Def.'s Brief 9-11.

An exposition of the law regarding conflicts between a VE and the DOT and the ALJ's duties to resolve them is not necessary unless the Court first determines whether there is a conflict at all. The ALJ found that Plaintiff can sit, stand, and walk for up to six hours "each," indicating Plaintiff can sit for up to six hours, stand up to six hours, and walk up to six hours in an eight-hour workday. AR 14. The VE testified that Plaintiff may perform the jobs of shipping and receiving weigher, laundry folder, and distribution clerk as defined by the DOT. AR 18; 66-67. As Plaintiff acknowledges, the DOT's job descriptions do not address sitting, standing, and walking requirements; they merely classify the jobs as "light work." DOT 209.687-014 (distribution clerk); 222.387-074 (shipping and receiving weigher); 361.587-010 (flatwork tier; identified by the VE as laundry folder). A "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251 at *5 (Jan. 1, 1983); *see* 20 C.F.R. §§ 404.1567(b), 416.967(b).

After comparing the plain language of the ALJ's RFC and the definition of light work, the Court must agree with the Commissioner that there is no conflict between the ALJ's RFC and the DOT. The ALJ's plain language indicates Plaintiff may sit, stand, and walk up to six hours "each" with regular breaks. AR 14. Similarly, "light work" requires standing or walking for up to six hours with intermittent sitting. SSR 83-10 at *5. Thus, the two definitions clearly accord with one another. There is no implicit limitation to three hours maximum, as Plaintiff argues. Pl.'s Mot. 22. The supposed conflict results from Plaintiff's self-created mathematical equation, which directly contradicts the ALJ's clear finding that Plaintiff can sit, stand, and walk for six

16

hours "each." Pl.'s Mot. 22. Accordingly, the Court finds that the ALJ did not err by failing to resolve a conflict between the VE's testimony and the DOT.

## VI. CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the ALJ correctly applied the proper legal standards.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 19] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause be **DISMISSED.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*